UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

TINA CRUZ,

    Plaintiff,

v.                                                                                            Civ. No. 19-726 GJF/SMV

JAMEAL LANDRUM et al.,

    Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO ENFORCE THE SETTLEMENT**

THIS MATTER is before the Court upon Defendants' "Motion to Enforce the Settlement" [ECF 50] ("Motion"). The Motion is fully briefed. ECF 51 (response); ECF 53 (reply); ECF 54 (Defendants' errata to the reply). The Court held an evidentiary hearing on the Motion on June 17, 2021. ECF 58 (clerk's minutes); ECF 59 (transcript). For the reasons stated below, the Court will **GRANT IN PART AND DENY IN PART** the Motion.

**I.    FACTUAL FINDINGS**

After examining all exhibits admitted and testimony rendered during the hearing, the Court finds the following facts to be established by a preponderance of the evidence:

On August 8, 2019, Plaintiff sued Defendants under 42 U.S.C. § 1983 and state law for personal injuries arising from her arrest by Las Cruces Police Department personnel in October 2018. ECF 1 at 6–11. Following discovery and in an effort to explore resolving the case, the parties participated in a settlement videoconference before the Honorable Stephan Vidmar, United States Magistrate Judge, on March 22, 2021. ECF 40 at 1. Although Plaintiff and her then-counsel, Margaret Strickland, were not physically collocated during the conference, they participated "virtually" together for the duration of the settlement conference.

1

Prior to the settlement conference, Judge Vidmar had required Plaintiff's counsel to send to Defendants' counsel a letter containing and explaining an opening demand. *See* Am. Order Setting Settlement Conf., ECF 36 at 2. Plaintiff's counsel complied. *See* Exh. F (composite exhibit containing Plaintiff's opening demand letter and Defendants' counteroffer letter). The Court credits Ms. Strickland's testimony that Plaintiff authorized her to make the opening demand of $400,000.00 to resolve the entire case. Judge Vidmar's order also required Defendants' counsel to respond to Plaintiff's counsel's letter with a counteroffer <u>and</u> any "proposed form of release" that Defendants were seeking as part of any settlement. *See* ECF 36 at 2. Through inadvertence, Defendants' counsel failed to comply with the second portion of Judge Vidmar's order and instead sent to Plaintiff's counsel only a letter containing and explaining their $10,000.00 counteroffer. *See* Exh. F.

At the settlement conference, Judge Vidmar conveyed the parties' counteroffers back and forth. The Court credits Ms. Strickland's testimony that Plaintiff personally authorized each of Plaintiff's counteroffers. During the settlement conference, the <u>only</u> nonmonetary term that Plaintiff or her counsel discussed in Judge Vidmar's presence was a stipulation that any settlement proceeds would need to be classified for tax purposes as damages for personal injury. The Court finds that none of Plaintiff's counteroffers – including her final demand – carried with it any nonmonetary term other than the one mentioned above.

The settlement conference ended with Plaintiff making a final demand of $117,000.00 (with the personal injury stipulation) to resolve the entire case. The Court finds that Plaintiff herself arrived at the final figure of $117,000.00.[1] Because that demand exceeded the authority

---

[1] At no point during the conference did Plaintiff tell Judge Vidmar that she had any other nonmonetary demands. *See* ECF 48 at 2 (Judge Vidmar asking Plaintiff at subsequent status conference why "she did not communicate her demands at the Settlement Conference."); ECF 59 at 105 (Plaintiff acknowledging that she did not tell Judge Vidmar

that Defendants' representatives had during the conference, Plaintiff agreed to leave the offer open until April 12, 2021. The Court finds that Plaintiff never withdrew her final demand nor instructed her attorney to do so. On April 5, 2021, well before the deadline and while Plaintiff's final offer remained valid, Defendants' counsel notified Plaintiff's counsel by text message (and a letter the next day) that Defendants had accepted Plaintiff's final demand. With Ms. Strickland's approval, Defendants filed a "Notice of Settlement." ECF 41 at 1–2.

After accepting the offer, Defendants *for the first time* sent Plaintiff's counsel a proposed settlement agreement. *See* ECF 59 at 56; *see also* Exh. H (settlement agreement). The agreement is five pages long and contains at least fifteen separately-numbered paragraphs. For reasons not relevant here because Plaintiff did not raise them during the settlement conference or incorporate them into her final demand, Plaintiff refused to sign the written agreement. The Court finds that, because Plaintiff had not seen (much less approved of or consented to) the written agreement at the time she made her final demand, the written agreement was *not* part of the settlement reached by the parties.

After refusing to sign the written agreement, Plaintiff terminated Ms. Strickland's representation [ECF 43; ECF 45] and began proceeding *pro se*. ECF 44; ECF 49.[2] The instant Motion soon followed.

## II. PARTIES' ARGUMENTS

Defendants argue that they timely accepted Plaintiff's $117,000.00 final demand on April 5, 2021, thereby creating a binding settlement agreement between the parties. ECF 50 at 4–5 (citing

---

that she wanted a protective order against the LCPD); ECF 59 at 114 (Plaintiff acknowledging that she did not tell Judge Vidmar she was concerned about ongoing medical expenses).

[2] Ms. Strickland filed a notice of an "attorney's charging lien for legal services and costs that have been incurred" in connection with this case, asserting that she is owed $44,927.08 in fees and costs. ECF 47 at 1. The Court will address the effect of that lien in a later proceeding.

*Hartbarger v. Frank Paxton, Co.*, 857 P.2d 776 (N.M. 1993)). For her part, Plaintiff contends that there was no oral agreement consummated between the parties because Ms. Strickland did not have authorization to make the final settlement demand. ECF 51 at 2 (quoting *Gomez v. Jones-Wilson*, 294 P.3d 1268, 1273 (NM. Ct. App. 2013)).

### III. ISSUES

The threshold issue is whether the parties entered into a binding oral agreement once Defendants accepted Plaintiff's final settlement demand on April 5, 2021.[3] If the Court concludes that a valid oral agreement was formed, the Court must also determine the terms of that agreement.

### IV. RELEVANT SUBSTANTIVE LAW

The Court has the authority to enforce a settlement agreement reached in a case pending before it. *United States v. Hardage*, 982 F.2d 1491, 1396 (10th Cir. 1993). Settlement agreements are contracts, and questions on their formation are settled by applying state contract law. *Shoels v. Klebold*, 475 F.3d 1054, 1060 (10th Cir. 2004). Under New Mexico law, "a contract must be factually supported by an offer, acceptance, consideration, and mutual assent." *Hartbarger v. Frank Paxton Co.*, 857 P.2d 776, 781 (N.M. 1993); UJI 13-801 NMRA. "Mutual assent is based on objective evidence, not private, undisclosed thoughts of the parties." *Stoller v. Roossein*, No. CV-04-0311 JCH/RLP, 2006 WL 8444543, at * 2 (D.N.M. Jan. 25, 2006) (quoting *Pope v. The Gap, Inc.*, 961 P.2d 1283, 1286 (N.M. Ct. App. 1998)). "[W]here material facts concerning the existence or terms of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing." *Hardage*, 982 F.2d at 1496.

---

[3] Defendants also ask the Court to award them attorney fees associated with filing the instant Motion. ECF 50 at 7. In its discretion, the Court declines to do so for two alternative reasons. First, the Court finds that Plaintiff has not acted in bad faith. *See Farmer v. Banco Popular of North America*, 791 F.3d 1246, 1255 (10th Cir. 2015) (recognizing that district courts have an indefeasible authority to impose sanctions on a party for "bad-faith misconduct." (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 53 (1991))). Second, the Court finds that Defendants' failure to send a draft settlement agreement in advance of the settlement conference, despite Judge Vidmar's order to do so, contributed substantially to the havoc that followed.

4

An attorney's authority to settle must be expressly conferred by the client. *Navajo Tribe of Indians v. Hanosh Chevrolet-Buick, Inc.*, 748 P.2d 90, 92 (citing *Augustus v. John Williams & Assoc., Inc.*, 589 P.2d 1028, 1030 (N.M. 1979)). "[T]he acts of an agent with actual authority are binding on the principal." *Tabet v. Campbell*, 681 P.2d 1111, 1114 (N.M. 1984). An agent has "express authority" when a principal "specifi[es] minutely what the agent is to do." Restatement (Second) of Agency § 7(c) (Am. L. Inst. 1958). "[I]t is presumed that an attorney of record who settles his client's claim . . . has authority to do so unless rebutted by affirmative evidence to the contrary." *Id.* The public policy of New Mexico favors settlement agreements and "courts have a duty to enforce them." *Envtl. Control, Inc. v. City of Santa Fe*, 38 P.3d 891 (N.M. Ct. App. 2001) "Because settlement agreements are highly favored, a party seeking relief from a settlement agreement has the burden of persuasion." *Flores-Valles v. U.S.*, No. Civ. 05-765-JB/LFG, 2006 WL 4062901, at *3 (D.N.M. June 30, 2006) (collecting cases).[4]

## V. DISCUSSION

### A. The Parties Entered into a Binding Oral Settlement Agreement

The Court has found that Plaintiff expressly authorized Ms. Strickland to make the final $117,000.00 settlement demand. Although Plaintiff argues that Ms. Strickland did not have "specific authorization" to settle her case, ECF 51 at 2, Plaintiff conceded that she directed Ms. Strickland to make the final $117,000.00 demand, ECF 59 at 121–22. Because Ms. Strickland had

---

[4] This burden of persuasion differs, however, in cases where there is an issue of whether an attorney had authority to enter the settlement agreement on behalf of his or her client. *See Gomez v. Jones-Wilson*, 294 P.3d 1269, 1274 (N.M. Ct. App. 2012) ("*Augustus* and *Bolles* teach that an attorney may not settle a client's claim without specific authorization from the client and that if there is an issue as to whether there was authorization, the party seeking enforcement of an alleged settlement agreement has the burden of establishing authorization. *Gonzales* holds that in a case where it is undisputed that client authorization existed, the burden of persuasion is on the party seeking to escape from the enforceability of an authorized settlement agreement."); *see generally Bolles v. Smith*, 591 P.2d 278 (N.M. 1979); *Augustus v. John Williams & Associates, Inc.*, 589 P.2d 1028 (N.M. 1979). Because Plaintiff acknowledged during the evidentiary hearing that she directed Ms. Strickland to settle the case for $117,000, ECF 59 at 121–22, it is Plaintiff's burden to establish that the settlement agreement was invalid. *Gomez*, 294 P.3d at 1274.

express authority to make such a demand, Plaintiff became bound by the legal effect of it once it was accepted. *Tabet*, 681 at 1114.

Aside from an offer, a binding agreement requires: (1) Defendants' acceptance of the offer, (2) valid consideration, and (3) mutual assent. *Hartbarger*, 857 P.2d at 780. Although Plaintiff has not disputed the existence of these remaining elements of contract formation, the Court nevertheless addresses them. Defendants validly accepted Plaintiff's offer via text message on April 5, 2021, and via letter the following day. *See* UJI 13-807 NMRA ("An acceptance is a statement or conduct made by one party to the other, showing that party's agreement to the terms of the other party's offer."). The $117,000.00 classified as personal injury damages qualifies as consideration because the parties engaged in arms-length negotiations to reach that final settlement amount in exchange for dismissal and release of all claims. *See* UJI 13-814 NMRA ("Consideration is any bargained-for benefit or advantage"). Last, the Court finds that the parties each gave mutual assent. "Mutual assent requires a showing of agreement by the parties to the material terms of the contract." UJI 13-816 NMRA. "Ordinarily, when one party makes an offer, and the other party accepts the offer, there is mutual assent." *Id.* Here, the Court specifically finds that the parties mutually agreed that Plaintiff would dismiss and release all of her claims in exchange for $117,000.00 classified as personal injury damages.

### B. The Settlement Agreement Included *Only* the Terms Incorporated into Plaintiff's Final Demand

The Court finds and concludes that the *only* terms to which the parties mutually assented were the following: (1) Defendants pay Plaintiff $117,000.00; (2) Defendants agree that the entire settlement amount would be characterized as personal injury damages; and (3) in exchange, Plaintiff would dismiss and release all pending claims in this lawsuit and any she could have filed

against the City of Las Cruces or its employees arising from the incident that gave rise to the lawsuit.

The reader should recall that mutual assent exists *only* where there is a showing of agreement by the parties to the material terms of the contract. *See* UJI 13-816 NMRA. Mutual assent must be based on *objective* evidence, not the "secret intentions" of the parties. *Pope*, 961 P.2d 376, 380 (N.M. Ct. App. 1998). The record shows that the *only* terms discussed by the parties prior to Defendants' acceptance were the three described above and no others. Moreover, the Court finds that Plaintiff was not apprised of the terms in Defendants' proposed settlement agreement because Defendants sent their proposed terms only *after* they had accepted Plaintiff's offer. Consequently, the Court will not require Plaintiff to sign the settlement agreement that Defendant disclosed to her counsel for the first time only *after* Defendants accepted Plaintiff's final demand.

## VI.  CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendants' Motion is **GRANTED IN PART** to the extent that the Court will enforce the parties' oral settlement agreement that contained the following terms:

(1) Defendants shall pay Plaintiff $117,000.00;

(2) Defendants shall characterize the $117,000.00 as personal injury damages;

(3) Plaintiff shall dismiss and release all pending claims in this lawsuit and any she could have filed against the City of Las Cruces or any of its employees arising from the incident giving rise to this lawsuit.

**IT IS FURTHER ORDERED** that Defendants' Motion is **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that Defendants shall deliver to Plaintiff by first-class mail a check made payable to her in the amount of $72,072.92 together with a document memorializing the parties' agreement that the proceeds are for personal injury damages.[5]

**IT IS FURTHER ORDERED** that Defendants shall tender into the Registry of the Court via the Clerk of the Court the remaining balance of $44,927.08, the distribution of which will be decided in a later proceeding.

**IT IS FINALLY ORDERED** that Defendants shall file one or more motions to dismiss only *after* the Court has ruled on the validity of the attorney's charging lien and decided the distribution of the proceeds held in the Registry of the Court.

**SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*

---

[5] That figure represents the difference between the $117,000.00 settlement amount and the $44,927.08 that Ms. Strickland has claimed in her Attorney's Charging Lien.